## In re LITTLE.

### No. 20943.

District Court, E. D. New York.

Jan. 17, 1933.

Latson & Tamblyn, of New York City (Almet Reed Latson, of New York City, of counsel), for bankrupt.

Maxwell M. Schenkel, of New York City, for creditor Commercial Bill Corporation.

GALSTON, District Judge.

The referee has reported that the petition of the bankrupt for discharge be denied.

The specifications set forth that the bankrupt committed an offense punishable by imprisonment under the Bankruptcy Act (11 USCA); that on or about June 4, 1930, he obtained money and credit from the Commercial Bill Corporation, the opposing creditor, by representing himself as the president of a duly organized corporation known as the Flatbush School, Inc., and presented a financial statement setting forth that the corporation had a surplus of $60,787.16; that the creditor, relying upon the truthfulness of the representations, extended the credit to the said corporation, of $12,000, and gave the money personally to the bankrupt, at the request of the bankrupt.

It is alleged moreover that the representations made by the bankrupt in respect to the existence of said corporation were false and fraudulent; that there was at the time no such corporation as the Flatbush School, Inc., in existence, and that the bankrupt had no legal capacity or authority to execute any papers of said Flatbush School, Inc., as president or otherwise; and that the corporation did not have a surplus as represented.

█ In respect to the alleged misrepresentations concerning the incorporation of the Flatbush School, Inc., I am of the opinion that the specifications cannot be sustained. The proof points clearly to the fact that the Commercial Bill Corporation, on June 4, 1930, and prior thereto, knew that the Flatbush School, Inc., had not been incorporated. The conferences and negotiations that had preceded indicated that the loan was really made on the credit of the bankrupt. He was the proprietor of the Flatbush School (unincorporated), and he was the owner of substantially the entire capital stock of Flatbush School Buildings, Inc., and Flatbush Playfields, Inc.

It was explained to the Commercial Bill Corporation that the intention of the bankrupt was to consolidate these various holdings in a corporation to be known as Flatbush School, Inc.; and indeed it was for that reason that the consolidated balance sheet was prepared by the bankrupt's accountant and submitted to the creditor. It appears to me beyond the possibility of doubt that the creditor was willing to go through with the loan before the incorporation and consolida-

tion were effected, and with full knowledge of those circumstances.

As lending additional support to this view, it seems natural that the creditor, had its officers believed that a corporation known as Flatbush School, Inc., was in existence, would have insisted upon a certified copy of a resolution of its board of directors authorizing the loan, its seal would have appeared on the agreement made with the creditor, and it would not have made its checks constituting the loan payable to the bankrupt personally.

It is patent throughout that the reason that the creditor desired a corporate debtor was to avoid the usury laws. The so-called "service" charge paid by the bankrupt can be interpreted in no other way than as a circumvention of the usury laws. It can also readily be understood why the creditor perhaps elected not to have the loan agreement made with either the Flatbush School Buildings, Inc., or the Flatbush Playfields, Inc., since neither of those corporations had all of the assets of the proposed new corporation, and since neither, by its charter, could have operated a school.

■ There has been much confusion made in the record from the bankrupt's failure to secure a charter under the Stock Corporation Law (Consol. Laws c. 59) of the state of New York, to enable him to operate his school; but the inference of fraud in respect thereto is unwarranted. Any one familiar with the incorporation of schools under the laws of the state of New York knows that the procedure is regulated by the Education Law (Consol. Laws c. 16) of the state; and so, after the attorney for the bankrupt had in good faith ascertained that incorporation could not be effected under the Stock Corporation Law, after much effort he succeeded in obtaining a charter from the Board of Regents of the University of the state of New York under the Education Law (Consol. Laws [section 59]). Moreover, under the well-established practice of that board, only a provisional charter, effective for five years, could have been issued. But the provisional charter that was issued perfected the organization of the Flatbush School as an incorporation and gave it full powers to operate, and full authority under the law to borrow money. Among those powers also was the right to issue capital stock in the amount of $187,500. So the delay in effecting incorporation, from June 4, 1930, the date of the loan, to January 15, 1931, the date of incorporation, was in no sense fraudulent, was not designed to mislead, and in point of fact did not mislead the creditor.

■ The charge, however, that the corporation did not have a surplus as represented, presents a more difficult and serious phase.

Among the assets listed in the financial statement furnished by the bankrupt prior to the making of the loan of June 4, 1930, is an item of bonds in the amount of $48,800. These bonds were the personal obligation of the bankrupt, secured by a second mortgage upon the real estate occupied by the school, which at the time of the issuance of the bonds was owned individually by the bankrupt. These bonds were of an issue bearing date December 1, 1917. From the terms of the bonds it appears that they were secured by an unrecorded mortgage and deed of trust of that date executed by the bankrupt in which Stanley E. Gunnison was named trustee. Though the mortgage, by the terms of the bonds, was referred to as an unrecorded mortgage, nevertheless in 1927 or 1928 the mortgage was recorded, at the time that the New York Title Company acquired a first mortgage on the property.

The disturbing facts, however, in respect to these bonds, are these: It appears that in December, 1929, payment of interest was in default as to some of the bonds. Also from the testimony of the bankrupt it appeared that representatives of the objecting creditor had asked questions regarding the value of the property, the amount of the two mortgages, and "how many bonds there were at present in my possession that had not been sold to others or used as collateral." It seems reasonable to suppose that such an investigator would have been interested in ascertaining whether there had been any default in the payment of interest on the bonds since December, 1929, some six months or more before the loan was made. Had such default been made known to the lender, it is quite conceivable that it would have investigated the rights under the second mortgage which accrued to the trustee in respect to foreclosure. Such information should not deliberately have been withheld; and that fact, together with the existence of unpaid taxes, raises a serious question as to the market value of the various real estate holdings embraced in the statement. If the bankrupt was justified in leading the creditor to believe that the value of the real estate holdings as reflected in the statement should have been enhanced by the figures set forth in the notes appended thereto, fair and honorable dealing required him to present the true facts

in respect to defaulted interest and tax arrears.

It is argued by the bankrupt as to these tax arrears and unpaid interest that they are included in the item of accounts payable. The difficulty, however, is that the items were not segregated, and this vital information was withheld from the Commercial Bill Corporation.

I am therefore obliged to confirm the referee's report. In re Licht (D. C.) 45 F.(2d) 844.

Settle order on notice.